Jacob Markowitz, J.
This is an application by plaintiffs and their attorney for an order decreeing that they possess a lien for the fair value of certain legal services rendered by said attorney, and for disbursements incurred, upon all payments of the Real Property Transfer Tax made to the defendants under protest in connection with real estate transactions closed *483 outside the City of New York. Incidental and additional relief is likewise sought. Various cross motions have been made which are also before the court for determination.
On July 29, 1959 plaintiffs commenced the present action for the return of $275 paid under protest to defendants, the City of New York and its Comptroller and Treasurer, as a tax on a deed delivered in Westchester County, pursuant to Local Law, 1959, City of New York, No. 49, which enacted a real property transfer tax. The complaint asked for a declaratory judgment that the local law was invalid to the extent that it purported to tax a conveyance made outside the city’s territorial limits. A declaratory judgment that the local law and the regulations issued thereunder were invalid in other respects was also prayed for. Motions for summary judgment were made by the plaintiffs and the defendants, in September, 1959. They came on for hearing on November 2, 1959. On December 9, 1959 this court granted plaintiffs’ motion to the extent of (1) directing the refund of the $275 and (2) declaring that the local law was invalid insofar as it purported to tax deeds delivered outside the city limits. The court also held that paragraph (e) of subdivision (1) of section 1 of the enabling act was not invalid for failure to designate the person taxed. In other respects, the complaint was dismissed. (22 Misc 2d 817.) Judgment, dated December 31, 1959, was entered upon the court’s decision on January 4, 1960. Appeals taken by defendants and plaintiffs were withdrawn by stipulation dated May 2, 1960.
On June 7, 1960 plaintiffs applied to this court for an order to show cause why the order and judgment should not be “resettled or modified or amended” to include the following provisions:
“ (1) That the aforesaid judgment shall constitute a determination of the rights of all persons similarly situated as the plaintiffs, to wit all persons who paid the Real Property Transfer Tax under protest to the City Treasurer of the City of New Yoi'k on real estate transactions closed outside the territorial limits of the City of New York;
“ (2) That the City Treasurer of the City of New York holds all of the money so received by him in trust for all persons who have made payments to him as aforesaid;
“ (3) Directing the City Treasurer of the City of New York to account to this Court for all moneys so paid to him as aforesaid;
“(4) Declaring that all of the aforesaid moneys so held by the City Treasurer of the City of New York constitute a fund for a class of persons similarly situated as plaintiffs, which *484 fund has been created and made available to such class by reason of the commencement and successful prosecution of this action;
“ (5) Adjudging and decreeing that the plaintiffs and their counsel, David Stein, Esq., having created said fund for a class, are entitled to a lien on said fund for reimbursement of all expenses incurred by the plaintiffs, including an allowance for the fair and reasonable value of the legal services of their counsel, David Stein, Esq.;
“ (6) Fixing a time and place for the filing and serving of the application of allowance for reimbursement of expenses, including reasonable legal fees of plaintiffs’ counsel, David Stein, Esq., and directing the payment of such expenses, including counsel fees out of the aforesaid fund.
“ (7) Enjoining and restraining the defendants from paying out any moneys out of said fund until after the final determination of plaintiffs’ application for allowances, including legal fees as aforesaid;”
The order to show cause contained a provision restraining the defendants, until the determination of the motion, from paying out “ any of the moneys collected * * * from persons who paid the Real Property Transfer Tax to the defendants under protest on real estate transactions closed outside the territorial limits of the City of New York.” After hearing the Corporation Counsel on behalf of the defendants, and without objection, the court signed the order to show cause and made it returnable on June 10, 1960.
On June 15, 1960 the court granted the motion to the extent of directing that the application be heard on October 10, 1960. It further directed that defendants, at the cost and expense of plaintiffs, give notice by mail to all persons who had applied for tax refunds on the ground that their closings of title took place outside the city limits. Plaintiffs were directed to give notice of the application, by publication in specified newspapers, to all persons who might be entitled to the return of taxes paid on conveyances delivered outside the city limits. Pending the hearing and determination of the application, the defendants were enjoined from refunding tax payments made on transactions closed outside the city, and all persons claiming refunds of such taxes were also enjoined from bringing actions or proceedings for the return of such tax payments. Plaintiffs’ application was held in abeyance until after the return day, as were objections made by defendants on the ground that the court is without authority to amend, modify or resettle the final order and judgment at this time.
*485 The notices mailed and published, pursuant to the order of June 15, 1960, required persons desiring to be heard on the application of plaintiffs to file affidavits setting forth their positions with respect to the application by September 1, 1960.
Approximately 150 affidavits, opposing the granting of the application on various grounds, have been filed. Each affidavit relates to taxes paid under protest on deeds to one or more parcels of real estate delivered outside the city limits.
In addition, a number of independent and cross motions have been made. Some seek to vacate the restraining provisions of the court’s order of June 15, 1960, or, in the alternative, to compel plaintiffs to file an undertaking. Others are made by taxpayers who appear specially for the purpose of applying to vacate the restraining provisions of the order of June 15, 1960, on the ground that they were not parties to the action and that, therefore, the court had no jurisdiction to restrain them. Still others seek, as alternative relief, that the court require plaintiffs to furnish an undertaking. Several, as alternative relief, ask a holding that the restraint does not apply to the moving taxpayer.
The opposition to the granting of plaintiffs’ application is predicated largely upon the following grounds: (1) that this action was brought by plaintiffs for themselves only and not also on behalf of other taxpayers similarly situated; (2) that the action could not properly have been brought on behalf of all other taxpayers who paid the real property transfer tax under protest; (3) that no notice was given to other taxpayers and they, therefore, had no opportunity to intervene in this action by their own attorneys; (4) that no fund was created by plaintiffs for the benefit of other taxpayers; (5) that there is no fund in the possession or under the control of the court from which it may grant an allowance to plaintiffs for benefits alleged to have been conferred on other taxpayers; (6) that no special circumstances exist which would justify an allowance to plaintiffs on the theory that their efforts resulted in an adjudication which benefited all other taxpayers under the doctrine of stare decisis; (7) that the court is without power to modify the final judgment many months after the entry thereof and the withdrawal of all appeals therefrom, and (8) that to grant plaintiffs’ application would be against public policy.
In addition to the above, many taxpayers oppose the application on the ground (a) that they did not close title or pay the tax under protest until after plaintiffs had already entered final judgment in this action. Others who closed title and paid under protest after this action was commenced, but before judgment, *486 also maintain (b) that plaintiffs may not charge the refunds due them with a share of plaintiffs’ counsel fees and disbursements. Some of the taxpayers claim (c) that they have already paid their own attorneys for all services required to obtain the refund of the payments they made under protest, and that to allow plaintiffs a lien on the refunds due them would result in their having to pay two attorneys’ fees. Others state (d) that they have agreed with their own attorneys on the fees to be paid for all services required to obtain refunds of their tax payments. Some of the taxpayers urge (e) that their protests were based on additional grounds not affected by the services rendered by plaintiffs’ attorney. Still others contend (f) that they were in no position to sue, at the time plaintiffs did, because the Comptroller had not yet finally rejected their claims for refunds,- — the law requiring that they first exhaust their administrative remedies.
In this connection, it is pertinent to observe that at the time this action was commenced by plaintiffs on July 29, 1959, only four title closings outside the city had occurred, involving tax payments of only $1,805.33. As of October 3, 1960, however, 631 taxes had been paid on closings claimed to have occurred outside the city, on which refunds have been sought. The total amount of the requested refunds by that date was $820,135.78.
Ordinarily, under the well-settled law of this State, an attorney may not recover legal fees from persons other than his client, merely because such persons were benefited by his services (Matter of Loomis, 273 N. Y. 76; Matter of Attorney-General v. North Amer. Life Ins. Co., 91 N. Y. 57; Matter of Hurewitz, 174 Misc. 182; Matter of Winburn, 160 Misc. 49). There are, however, certain exceptions to this rule. One of them relates to stockholders ’ derivative actions brought on behalf of their corporation, which is made a nominal defendant. Class or representative actions brought on behalf of all members of a class for whose benefit the plaintiff may properly sue, constitute another exception. A third exception exists where the plaintiff through his lawsuit has obtained a decree which creates a fund in which others may share or where he has rendered services in connection with such a fund which benefit other persons interested in the fund. An additional exception also exists where a fund is created, not “ automatically ’ ’ by the decree obtained by the attorney in favor of his client, but indirectly, through application of the doctrine of stare decisis. Allowances in such a case are, however, ‘ ‘ appropriate only in exceptional cases and for dominating reasons of justice ” (Sprague v. Ticonic Bank, 307 U. S. 161, 167).
*487 The applicability of these exceptions to the general rule that an attorney may recover a fee only from his own client will now be discussed.
The exception relating to stockholders’ derivative actions is obviously not applicable to the instant case.
It is well settled that where a plaintiff sues as representative of a class, in an action which the law permits him to maintain as a representative or class action, attorney’s fees and disbursements may be recovered from all members of the class (2 Carmody-Wait, New York Practice, p. 695). Examination of the summons and complaint in this action reveals, however, that these plaintiffs sued for themselves alone and not also on behalf of other taxpayers claimed to be similarly situated. The title of the action in the summons and complaint did not describe the plaintiffs as suing on behalf of anyone but themselves. The same is true as to the body of the complaint. There were, it is true, statements in that pleading to the effect that a great number of other corporations and individuals were affected by the local law imposing the tax, and that they were all faced with a dilemma because if they did not pay the tax they might be subject to criminal prosecution. There was also a statement that unless there were a judgment declaring the rights of plaintiffs and others similarly situated there would be multiplicity of suits and great confusion. These statements were, however, insufficient to make the suit a class suit brought on behalf of others as well as the plaintiffs themselves. The reason for plaintiffs’ inclusion of these references to others in their complaint was apparently to bring the case within language of the Appellate Division in Socony-Vacuum Oil Co. v. City of New York (247 App. Div. 163) where the court upheld the remedy of declaratory judgment because (p. 167) “The case at bar * * * involves great numbers of the municipal population * * * all of whom * * * are ordered to collect and to pay, respectively, a tax which exceeds the amount properly chargeable. Wide public interests are involved and a judicial declaration will be of public assistance ”. This language of the court was quoted in plaintiffs ’ main brief (p. 11) in support of their argument that an action for a declaratory judgment was a proper remedy. Plaintiffs’ purpose in referring to the great numbers of people affected by the declaratory judgment sought was to prevent dismissal of the complaint on the ground that the case was not a proper one for the remedy of declaratory judgment, rather than to make the action a class or representative one. They sought return of the $275 tax paid by one of them, but did not ask judgment for the return *488 to other taxpayers of the taxes paid by the latter. Nowhere was there any statement indicating that plaintiffs purported to sue on behalf of anyone but themselves. Such a statement was necessary (2 Carmody-Wait, New York Practice, p. 690; 2 Carmody, New York Practice, p. 902). Had the action been avowedly brought as a class or representative action, other taxpayers would have had the right to intervene and join in the action by counsel of their own choice. In view of the fact that the action did not purport to be a class action, this right to intervene was at no time available to any other taxpayers. Nor may any inference be drawn, from the fact that the return of only $275 was sought by plaintiffs, that the suit was being maintained on behalf of others as well as themselves. The complaint alleged that both plaintiffs were engaged in the business of buying, selling, exchanging, leasing and otherwise dealing in real estate, and that, in the one-year period prior to suit, they had engaged in more than 100 deals involving millions of dollars in amount. Presumably, the plaintiffs themselves, therefore, had a sufficient stake in the attack upon the validity of the tax to warrant their incurring the expense of a suit to declare the tax illegal.
Apparently recognizing that, on the basis of the summons and complaint and the subsequent papers filed or entered herein prior to the making of the present motion, this action was not a class or representative suit, plaintiffs seek on the present motion an amendment of the judgment so as to provide that it is a determination of the rights of all persons similarly situated. This amendment would transform an individual action to a class or representative one after the entry of final judgment and the withdrawal of the appeals taken therefrom. This change, being one of substance and not a mere correction of a clerical error or irregularity, may not be made (Herpe v. Herpe, 225 N. Y. 323; Schenectady Trust Co. v. Emmons, 290 N. Y. 225, 229; 7 Carmody-Wait, New York Practice, Judgments, § 128, p. 368 et seq.). The motion must, accordingly, be denied to the extent that it seeks said amendment.
Another well-established ground for charging a legal fee to persons who did not retain the attorney claiming the fee exists where the efforts of the attorney resulted in the creation or the distribution of a fund for the benefit of the persons sought to be charged as well as for the benefit of the client who retained the attorney. In the case at bar, however, it is clear that there is no fund in existence which plaintiffs can claim they or their attorney created or distributed. The city authorities were not required by law to segregate, as trust funds, tax *489 payments made under protest, nor is there any claim that they did, in fact, do so. The taxpayers merely possess the right to apply for refunds and to sue for money judgments if their applications are denied. The temporary restraint contained in the order of June 15, 1960, does not create a fund, for it merely enjoins defendants from paying from the city’s general funds. In an apparent effort to create a fund, in order to have a basis for an allowance from others, plaintiffs ask a direction that the City Treasurer account to this court for all tax payments made to him under protest. There is, however, no sound legal basis for compelling such an accounting, since there is no fiduciary or confidential relationship between the taxpayers and the defendants, but merely a debtor-creditor relationship (Goodman Co. v. New York Tel. Co., 285 App. Div. 404, affd. 309 N. Y. 258, 265).
In Kovarsky v. Brooklyn Union Gas Co. (279 N. Y. 304) the plaintiff had obtained a declaratory judgment on behalf of himself and others similarly situated, that a gas company charge to its customers was illegal. Thereafter, an application to compel other gas consumers to contribute to the fee of plaintiff’s counsel was denied, not only because the other consumers were not before the court, but also because the judgment to be entered would not grant refunds to the other consumers and there would, therefore, be no funds to which the attorney’s lien could attach (170 Misc. 855, affd. 261 App. Div. 822).
The only possible basis for granting plaintiffs a right to compel other taxpayers to contribute to their counsel fees and disbursements is to be found in the opinion of the United States Supreme Court in Sprague v. Ticonic Bank (supra). The facts involved there may be briefly stated. Lottie Sprague, the petitioner, delivered $5,022.18 to the Ticonic Bank, in trust to be invested for her benefit. Part of the money was to be deposited in the bank’s savings department. The remaining funds were deposited by the bank in its commercial checking account, as were other trust funds awaiting investment. Pursuant to the Federal Reserve Act, bonds were set aside in the bank’s trust department to secure the trust funds deposited in the commercial checking account. Another bank thereafter took over all the assets of the Ticonic Bank and assumed its indebtedness. Both banks subsequently closed and went into the hands of a receiver. Sprague sued to impress a trust for herself alone upon the proceeds of the bonds which had been set aside to secure the trust funds of herself and others deposited by the bank in the checking account. After succeeding in impressing a trust for the amount due her, Sprague applied for an order directing *490 her counsel fees and expenses to be paid out of the proceeds of the bonds. The theory upon which she asked for this relief was that (p. 163) “by vindicating her claim to a lien on the proceeds of the earmarked bonds to the amount of her trust funds, she had established as a matter of law the right to recovery in relation to fourteen trusts in situations like her own ”.
The Supreme Court expressly recognized that Sprague (p. 166) “neither avowed herself to be the representative of a class nor did she automatically establish a fund in which others could participate ”. It held that the Federal courts nevertheless possessed “power” to grant the application, which was the only question presented to the Supreme Court for determination (p. 167), leaving it to the District Court to decide whether or not the case was a proper one for the exercise of the power. It declared that a fund had (p. 167) “for all practical purposes ” been created for the benefit of others, through operation of the doctrine of stare decisis, since (p. 166) ‘ ‘ petitioner by establishing her claim necessarily established the claims of fourteen other trusts pertaining to the same bonds”. The language of the court indicates, however, that it took the view that there was a fund under the control of the court, viz., the proceeds, in the hands of the receiver, of the bonds held as security. These proceeds had been held to be trust funds impressed with a lien for the amount due Sprague. They were also, by virtue of stare decisis, trust funds impressed with a lien for the amounts due others. What the court appears to have held was that, there being a trust fund in existence, the court’s power to allow fees out of it did not depend upon whether such fund was directly or “automatically ” created by the decree in Sprague’s litigation, or only indirectly created through operation of the doctrine of stare decisis. Thus the court said (p. 167): “ But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation — the absence of an avowed class suit or the creation of a fund as it were, through stare decisis rather than through a decree — hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation”. (Italics supplied.)
This court’s construction of the Sprague decision (supra) is that adopted by the Court of Appeals in Walsh v. National Sav. & Trust Co. (247 F. 2d 781, 782): “ In an opinion dealing %oith a fund created for other members of a class solely through the operation of stare decisis, Mr. Justice Fbaxkeubteb stated ” (italics supplied).
*491 It is important to note that the court added (p. 167): “ In any event such allowances [i.e., on the theory of stare decisis] are appropriate only in exceptional cases and for dominating reasons of justice. But here we are concerned solely with the power to entertain such a petition.”
In the instant case, as already pointed out, the judgment did not create any fund in which others than plaintiffs had any interest, nor was such a fund created by operation of the doctrine of stare decisis. The judgment did establish the rights of other taxpayers who paid under protest to recover the amounts of their payments as general creditors of the defendants, but no fund whatsoever resulted. It is difficult from a reading of the opinion in Sprague v. Ticonic Bank (supra) to believe that the court would have held as it did had Sprague recovered merely a money judgment for herself and thus established the right of others, similarly situated, to likewise recover money judgments. All the court’s language about the creation of a “fund” would seem to be wholly inapplicable to such a situation. Suppose, for example, that plaintiffs here had not paid the tax under protest, but had successfully sued for a declaratory judgment that the local law was illegal and that they did not have to pay the tax. Could plaintiffs, in such a situation, successfully sue all persons conveying realty outside the city limits for part of their legal fees and disbursements on the theory that through stare decisis such persons benefited through not having to pay the tax? In the court’s opinion, the Sprague case (supra) is not authority for such a result. The fact that, in the case at bar, the other taxpayers have already paid the tax and are general creditors of the defendants does not appear to be sufficient to warrant any distinction between the hypothetical situation and the one here existing.
Regardless, however, of whether or not the absence of a fund in the instant case is sufficient, by itself, to render inapplicable the doctrine of Sprague v. Ticonic Bank (supra) the court is of the opinion that the present plaintiffs are not entitled to recover here under the doctrine of that case for a different reason. This is so because, as previously observed, the Supreme Court expressly declared that allowances on the theory of benefits resulting from application of stare decisis “ are appropriate only in exceptional cases and for dominating reasons of justice ”. “ Dominating reasons of justice ”, in the instant case, clearly compel a denial of the allowances applied for. Indeed, the granting of the allowances would tend to produce such abuses and michievous results that it might well be held that their granting would be against public policy. If plaintiffs *492 were permitted to prevail, any attorney bringing an action to declare invalid tax laws or other statutes could, if successful, recover a fee from every member of the public who, through stare decisis, may be benefited by the decision in favor of the plaintiff in that action, either through being entitled to a refund, or through being saved from the necessity of paying the tax, or otherwise. For example, by succeeding in an action to declare invalid a sales tax due from vendors, the plaintiffs’ attorney could obtain a fee from every vendor in the city who is entitled to a refund of taxes already paid, or who is entitled to refrain from paying the tax in the future, with no time limit. The huge fees which could be obtained, if this theory were to prevail, as the result of successful suits to invalidate tax laws and other statutes, would put a tremendous premium upon the bringing of such suits. Every, or almost every, statute would, in all likelihood, be attacked as invalid, no matter how slim the chances of success. The large contingent attorneys’ fees at stake would impel many to gamble on a successful result even where the grounds of alleged invalidity are of dubious merit. As the Court of Appeals said in reference to the granting of allowances against nonparties who benefit through another’s litigation: “ This doctrine, once laid down, would easily draw within its range almost every case in equity and work out dangerous results. We reject it ” (Matter of Attorney-General v. North Amer. Life Ins. Co., 91 N. Y. 57, 65-66, supra). Attorneys would, in all probability, indulge in a race to be the first to attack each new law and thus control the conduct of the litigation. The resulting situation would be worse than that which formerly obtained as to the bringing of stockholders’ suits and which the Legislature found it necessary to remedy. If the doctrine of Sprague v. Ticonic Bank, which is limited to “ exceptional cases and for dominating reasons of justice ”, were to be applied here, it would be difficult to imagine in what situations it would not be proper to apply it. From being a doctrine to be sparingly exercised, it would become a doctrine of universal application.
The language of the Court of Appeals in Kilbourne v. St. John (59 N. Y. 21) at page 27, is particularly appropriate: “ To permit every tax-payer in the State, who believes that a tax for an unconstitutional purpose had been imposed by the legislature, to commence an action in equity against the State treasurer to * * * compel him to distribute the fund [the proceeds of the tax] among the tax-payers of the State * * * would, I think, lead to the most alarming results. It would be the direct opposite of one of the acknowledged sources of *493 equity jurisdiction, which is, that it exists when necessary to prevent a great number of suits. This would, I think, inevitably cause an immense number.”
If the present action had been brought as an avowed class or representative action, it is doubtful that plaintiffs could successfully claim contribution to their fees and expenses from persons who closed title and paid taxes after the action had come to an end. However, if the doctrine of Sprague v. Ticonic Bank (supra) were applied to the instant case, the test would be only whether the taxpayers were benefited by the plaintiffs’ judgment, through stare decisis, with the result that taxpayers would be liable to contribute even if they closed title and paid the tax after this action had terminated. Thus plaintiffs’ attorneys might be in a better position than if they had avowedly sued on behalf of the alleged class. This is only one of the unfortunate results which would flow from extending the doctrine of benefits through stare decisis to the case at bar.
Various cases cited by plaintiffs are clearly distinguishable. Bysheim v. Miranda (45 N. Y. S. 2d 473); Gildener v. Lynch (54 N. Y. S. 2d 827), and Matter of Allen v. Chase Nat. Bank (180 Misc. 259) stand merely for the proposition that in stockholders ’ derivative actions on behalf of their corporation, allowances may be made for benefits resulting from the litigation even if those benefits do not create a fund. In Matter of Bond & Mtge. Guar. Co. (68 N. Y. S. 2d 10) the court pointed out (p. 13) that it was the understanding of all concerned in that case that the expenses of the Series B-IC trustees and the fees of their counsel in the test action would be a charge against all the certificated issues. Representatives of all the issues had been invited to attend and participate. Some of them did participate. In these circumstances, the test suit was in reality a class or representative one. In Lamont v. Travelers Ins. Co. (272 App. Div. 882) the language relied upon by plaintiffs is from a dissenting opinion. Moreover, in that case there was a fund brought into court by the International Committee of Bankers and a request for instructions as to its distribution. The language cited merely declared that services rendered as to the distribution of the fund which were of benefit to all beneficiaries, could be charged to all of them even if they did not actually create the fund.
In Southern Ry. Co. v. Peck (178 Misc. 638, 639) the court pointed out that the parties had treated the action as affecting all certificate holders similarly situated, i.e., as a class or representative matter. Abrams v. Textile Realty Corp. (97 N. Y. S. 2d 492) involved causes of action which purported to be on behalf *494 of all others similarly situated. The holding that benefits to the corporation were enough, though no fund was created, was based on the doctrine applicable to stockholders’ derivative actions, the first cause of action being of that character. The case of New York Cent. R. R. Co. v. New York & Harlem R. R. Co. (275 App. Div. 604) was likewise a stockholders’ derivative action. In Washington Gas Light Co. v. Baker (195 F. 2d 29) the court had impounded all payments of the increase in the utility rate, pending the outcome of litigation as to the validity of the increase (p. 33). It held that (p. 33) the District Court could provide for payment, out of the fund, for the professional services rendered in making the fund available for distribution by obtaining an adjudication that the increase was invalid. The case differs from the one at bar, where no fund was created by plaintiffs.
For the reasons indicated, this court is of the opinion that plaintiffs ’ motion must in all respects be denied and the injunction (against defendants’ payment of refunds and against the bringing of actions or proceedings by other taxpayers) terminated. In view of the conclusion reached, it becomes unnecessary to consider (1) whether this action could properly have been brought as a class action had plaintiffs purported to sue on behalf of a class and whether, in such an action, the attorney for plaintiffs would have been entitled to a fee from others than the plaintiffs, (2) whether plaintiffs’ application for counsel fees must or should be denied on the ground that it would constitute a modification of the final judgment which may not be modified at this time, (3) whether notice of the bringing of the action should have been given to other taxpayers, or (4) whether there should be any differentiation between (a) those who closed title and paid their tax before the action was commenced, (b) those who did so thereafter but before judgment, and (c) those who did so after judgment. It is likewise unnecessary to determine whether those taxpayers who have already paid their own attorneys for all services necessary to obtain a refund or who have become indebted in an agreed-upon amount for such services should also be required to contribute to plaintiffs’ disbursements and counsel fee. Determination of the questions presented by the cross and other motions and the special appearances also becomes academic by reason of the denial of plaintiffs’ application and the termination of the injunction.
The motion is, accordingly, denied in all respects and the cross and other motions are also denied, as academic.