NEW YORK PUBLIC INTEREST RESEARCH GROUP, INC., et al., Respondents, v HUGH L. CAREY, as Governor of the State of New York, Appellant.

Third Department, October 26, 1977

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon* and *Ruth Kessler Toch* of counsel), for appellant.

*Dennis A. Kaufman, Leon E. Wein* and *William J. Quirk* for respondents.

LARKIN, J. On July 19, 1977 the Governor signed into law chapter 455 of the Laws of 1977, which is known as the Economic Action Program Bond Act. This act authorizes the creation of a State debt in the amount of $750,000,000 for the purpose of promoting and implementing a comprehensive and integrated economic action program by providing moneys for industrial and community development, tourism and recreation, conservation and environment, and local transportation access. The act does not become effective however, unless and until the proposition is approved by the people at the General Election to be held on November 8, 1977.

On August 8, 1977 the State Board of Elections certified the text of the bond proposition as it is to appear on the ballot to the various boards of election in the State. Thereafter the plaintiffs, as citizen-taxpayers of the State, commenced the present action against the Governor and the Chairman of the State Board of Elections seeking to have chapter 455 declared unconstitutional on the ground that the bond authorization is not for a single work or purpose as required by section 11 of article VII of the State Constitution, but rather for four purposes divided into the functional categories of industrial

and community development, conservation and environment, tourism and recreation, and local transportation access. Additionally, plaintiffs sought a permanent injunction against its enforcement and operation, a mandatory injunction directing the Chairman of the State Board of Elections to rescind and nullify his certification, and reasonable attorney's fees. The Governor answered plaintiffs' complaint contending that the act is constitutional since it is for the single purpose of comprehensive economic development, that the entire State Board of Elections was the proper party and, in any event, neither the board nor its chairman had the power to decertify a proposition and remove it from the ballot, that an injunction against the implementation of the bond authorization is premature since it has not yet been approved by the voters, and that the plaintiffs, as citizen-taxpayers, could not bring an action to challenge the validity of the bond authorization.

Following joinder of issue, the respective parties moved and cross-moved for summary judgment. Upon consent of all parties, plaintiffs' complaint as to the Chairman of the State Board of Elections was dismissed. Special Term declared the bond authorization act unconstitutional, permanently enjoined its operation and enforcement, and awarded plaintiffs the costs of the action including reasonable attorney's fees. A judgment was entered on Special Term's decision and the present appeal ensued.

Initially we conclude that the plaintiffs, as citizen-taxpayers of the State, have standing to challenge the validity of a bond authorization act and that an injunction against implementation of the present bond authorization act is not premature (State Finance Law, § 123-b, subd 1; § 123-i; see *Wein v Carey,* 41 NY2d 498; *Boryszewski v Brydges,* 37 NY2d 361, 364; *Matter of McCabe v Voorhis,* 243 NY 401, 412; *People ex rel. Hotchkiss v Smith,* 206 NY 231; cf. *Bareham v City of Rochester,* 221 App Div 36). We deem the constitutional issue involved herein to be of such public interest and magnitude, that judicial intervention at this juncture is not only prudent but warranted.

Section 11 of article VII of the State Constitution provides, in pertinent part, as follows: "[N]o debt shall be hereafter contracted by or in behalf of the state, unless such debt shall be authorized by law, *for some single work or purpose,* to be distinctly specified therein." (Emphasis added.)

In interpreting this provision we must consider, among

other things, the circumstances surrounding its passage and the past practice in regard to this provision *(New York Public Interest Research Group v Steingut,* 40 NY2d 250, 258).

The precursor to the present constitutional provision was adopted in 1846 for the avowed purpose of preventing the Legislature from continuing its earlier practice of extensive borrowing which had led to a serious financial crisis in the 1840's, and provided that any proposed long-term indebtedness of the State must be approved by the people of the State and must be for a "single work or object" (former NY Const, art VII, § 12; 1938 Report of New York State Constitutional Convention Committee, vol 10, pp 81-98). In *People ex rel. Hopkins v Board of Supervisors of Kings County* (52 NY 556, 559), the Court of Appeals, in construing the constitutional language "single work or object" stated: "No more stringent or judicious provision could be devised to secure to the electors the information necessary to an intelligent expression of their will, and to enable them to act upon the merits of the proposition unembarrassed and undisturbed by interests and influences other than those connected with the character and importance of the single work or object for which it should be proposed to contract the debt."

For a number of reasons including the increasing scope of governmental activity, the general finances of the State, and the inability of the State to undertake any major public improvement project, it was felt that the language "single work or object" was too severely restrictive since it would permit a bond issue for only one physical structure (1915 Revised Record of the New York Constitutional Convention, vol 2, pp 1295-1299). Accordingly, in 1938 the Constitution was amended by substituting the word "purpose" for the word "object". In recommending the change in the wording of section 11 of article VII, the Committee on State Finances and Revenues of the Constitutional Convention reported (1938 Rev Record of New York Constitutional Convention, vol II, pp 798-799): "At present a debt can be contracted only for 'some single work or object.' As these terms appear to be synonymous and relate to something physical, it is deemed wiser to substitute the word 'purpose' for the word 'object' and remove any doubt that may exist as to the power of the State to contract a debt for some single objective that may relate to more than one physical structure or, indeed, as in the case of relief bonds, may not include a physical structure. This

change is in accordance with the actual construction which has been placed upon the existing language. The adjective 'single' continues, of course, to qualify both the nouns 'object' and 'purpose.' "

Despite the substitution of the word "purpose" for the word "object", the essential requirements of the original constitutional provision remain intact, that is, the Legislature has to submit any long-term debt proposal to the people for their approval, and any proposed debt had to be for some *single* work or purpose, to be distinctly specified therein.

Although the constitutional requirement that no debt be authorized by law unless it is for a single work or purpose is undoubtedly more flexible than the single work or object requirement that prevailed until 1938, we find that the framers of the 1938 amendment to present section 11 of article VII did not intend to permit incurrence by the State of multi-purpose debt. To conclude otherwise would be antagonistic to the spirit and object of the constitutional restraint on the legislative debt-creating power, the purpose of which restraint is to permit the people of the State to intelligently evaluate and appraise the single purpose of any proposed long-term bonded indebtedness to be incurred by the State and to prohibit the Legislature from lumping several purposes into one bond authorization and thereby obtain voter approval that perhaps could not otherwise be obtained if the relative merit and strength of each purpose were separately evaluated and appraised.

In the instant case, defendant contends that the proposed bond authorization act does not create a multi-purpose debt but rather is for the single purpose of "comprehensive economic development". In order for a bond authorization act to constitute a single purpose the various components that enter into it must be so necessarily and naturally related that when combined they constitute an entity; something complete in and of itself but separate and apart from other objects. Here, despite defendant's protestations to the contrary, the proposed bond authorization act is not for a single purpose such as transportation or environment but rather is for four separate and disparate purposes divided into functional categories. The broad term "comprehensive economic development" does not, as defendant contends, constitute a single purpose. Although the components of each functional category may be sufficiently related to each other so as to constitute a single

purpose, the four functional categories that comprise the purpose of "comprehensive economic development" in the proposed bond authorization act are not so naturally and necessarily related to each other as to constitute a single purpose within the meaning of the Constitution. Acceptance of defendant's interpretation of the phrase "single work or purpose" to include "comprehensive economic development" would render the phrase meaningless and would permit the Legislature by the use of semantics to evade the constitutional restriction on its power to incur long-term bonded indebtedness and lump three or four different purposes into one bond authorization in order to gain support from adherents of each to approve the authorization. This is exactly what the framers of the Constitution sought to restrict and prohibit. Accordingly, we conclude that chapter 455 of the Laws of 1977 is unconstitutional.

With respect to plaintiffs' request for attorney's fees, we find that in the circumstances of the present case the application of the "common fund theory" is inappropriate and that, therefore, plaintiffs were not entitled to an award of such fees (cf. *Gerzof v Sweeney,* 22 NY2d 297; *Nance v Town of Oyster Bay,* 54 Misc 2d 274; *Realty Equities Corp. v Gerosa,* 30 Misc 2d 481).

The judgment should be modified, on the law and the facts, by striking so much thereof as awards plaintiffs' attorney's fees in the action, and, as so modified, affirmed, without costs.

HERLIHY, J. (concurring). I would prefer to have the proposition involved herein submitted to the electorate before deciding the issue of constitutionality. However, inasmuch as the majority is reaching the merits, I agree that chapter 455 of the Laws of 1977 is unconstitutional.

MAHONEY, J. (dissenting). While it is true that the Supreme Court of this State may rule on the constitutionality of a proposition to be placed on the ballot, it is not compelled to do so. *(Matter of McCabe v Voorhis,* 243 NY 401; *New York Edison Co. v City of New York,* 282 NYS 936, affd 246 App Div 511; see, also, *People ex rel. Hotchkiss v Smith,* 206 NY 231). Where, as here, the proposition has already been certified to the local boards of election by the State Board of Elections (Election Law, § 68; L 1974, ch 604, § 13) and plaintiffs have voluntarily consented to a dismissal of their complaint against Stephen May, Chairman of the State Board of

Elections, thereby rendering both Special Term and this court powerless to order the board or its chairman to rescind the certification of the proposition, judicial perception should indicate that an opinion on the constitutionality of the proposition would be more advisory than concrete.* It is a question of prudence rather than power *(Matter of McCabe v Voorhis, supra).*

Here, plaintiffs' conceded standing to bring this action is diminished by the remote nature of their relationship as taxpayers to the act herein challenged. The act is not yet effective and cannot become so until approval at the general election, as required by the Constitution (NY Const, art VII, § 11) and its own terms (L 1977, ch 455, § 3). While there may be some dispute whether the fact that the proposed act is only a proposition rather than an enactment goes to the issue of justiciability under CPLR 3001, it is clear that it raises the issue of the court's power to determine abstract, moot or academic questions, or to render advisory opinions (see *Matter of State Ind. Comr.,* 224 NY 13; *New York Public Interest Research Group v Carey,* 55 AD2d 274). The touchstone in deciding the appropriateness of a declaratory judgment, especially on a constitutional issue, is that it "serves some practical end in quieting or stabilizing an uncertain or disputed jural relation" *(James v Alderton Dock Yards,* 256 NY 298, 305). The majority's opinion can serve no such purpose unless and until the voters approve this proposition. As noted above, both Special Term and this court are lacking in jurisdiction to compel the State Board of Elections to rescind its certification, or to direct that local boards of election remove the proposition from the ballot, or to instruct that the State Board of Canvassers not tabulate the people's vote.

Therefore, since plaintiffs' counsel at oral argument conceded that no further action is contemplated if this court should affirm Special Term, it follows that the people of this State will cast their votes for or against a proposition which has been judicially declared to be unconstitutional. There is no need for such chaos. We should withhold consideration of this issue and face it, if required, after voter approval and then in a proper jural context.

---

* The State Board of Elections certified the bond proposal on August 9, 1977. No reason appears in the record nor was any advanced at oral argument why plaintiffs waited until September 12, 1977 to initiate this action.

The judgment should be reversed, and the petition dismissed.

SWEENEY, J. P., and MAIN, J., concur with LARKIN, J.; HERLIHY, J., concurs in a separate opinion; MAHONEY, J., dissents and votes to reverse in an opinion.

Judgment modified, on the law and the facts, by striking so much thereof as awards plaintiffs' attorney's fees in the action, and, as so modified, affirmed, without costs.