[660 NYS2d 881]

In the Matter of ROBERT L. SCHULZ et al., Appellants, v NEW YORK STATE EXECUTIVE et al., Respondents.

Third Department, July 17, 1997

## APPEARANCES OF COUNSEL

*Robert L. Schulz,* Queensbury, and *John Salvador, Jr.,* Lake George, appellants *pro se.*

*Dennis C. Vacco, Attorney-General,* Albany *(Denise A. Hartman* of counsel), for New York State Executive, respondent.

*Cravath, Swaine & Moore,* New York City *(Michael R. Siebecker* of counsel), for Michael C. Finnegan and another, respondents.

*Patricia L. Murray* and *Peter S. Kosinski,* Albany, for New York State Board of Elections, respondent.

## OPINION OF THE COURT

MERCURE, J.

In July 1996, the Legislature passed Laws of 1996 (ch 412), which authorized the State to incur indebtedness not exceeding $1.75 billion for the purpose of preserving the environment. That law, known as the "Clean Water/Clean Air Bond Act of 1996" (L 1996, ch 412, § 1; hereinafter the Bond Act), was signed by respondent Governor and approved by the voters at the November 1996 general election. The stated "single purpose" of the Bond Act was: "preserving, enhancing, restoring, and improving the quality of the state's environment by the accomplishment of projects and the funding of activities by state agencies, public authorities and public benefit corporations, municipalities, and other governmental entities and not-for-profit corporations for and related to protecting, improving, and enhancing the quality of drinking water and enhancement of water bodies; by providing funds for open space, and for parks, historic preservation, and heritage area improvements; by providing funds for solid waste projects; by providing funds for the restoration of contaminated properties, and by providing funds for air quality projects" (Bond Act § 2). Simultaneously, Laws of 1996 (ch 413) was enacted for the purpose of implementing the Bond Act within the separate categories of safe drinking water projects, clean water projects, solid waste projects, environmental restoration projects and air quality projects.

Petitioners commenced this combined proceeding and action seeking, *inter alia,* a declaration that the Bond Act was unconstitutional as violative of NY Constitution, article VII, § 11[1] and article III, § 16.[2] In lieu of serving an answer, respondents moved to dismiss the petition/complaint; petitioners responded with a motion for summary judgment. Supreme Court denied petitioners' summary judgment motion as premature and, addressing respondents' motion, determined that petitioners

---

1. As relevant to this proceeding, NY Constitution, article VII, § 11 provides that: "no debt shall be hereafter contracted by or in behalf of the state, unless such debt shall be authorized by law, for some single work or purpose, to be distinctly specified therein".

2. NY Constitution, article III, § 16 provides: "No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act."

lacked standing and that the Bond Act violated neither of the identified constitutional provisions. Petitioners appealed to the Court of Appeals from so much of Supreme Court's order as declared that the Bond Act was not violative of NY Constitution, article VII, § 11 or article III, § 16. The Court of Appeals *sua sponte* transferred the appeal to this Court, and we denied petitioners' subsequent motion to enlarge the issues on appeal.

■ Addressing first the issue of standing, we agree with respondents that petitioners lack citizen-taxpayer standing to mount either of the challenges at issue here. As shall be discussed in some detail, because State Finance Law § 123-b (1) specifically excepts from its application "the authorization, sale, execution or delivery of a bond issue or notes issued in anticipation thereof by the state or any agency, instrumentality or subdivision thereof or by any public corporation or public benefit corporation", a taxpayer has neither common-law nor statutory standing to challenge the issuance of State bonds or bond anticipation notes (*see, Wein v Comptroller of State of N. Y.*, 46 NY2d 394, 399-400; *Schulz v State of New York* [hereinafter *Schulz I*], 193 AD2d 171, 177, *affd* 84 NY2d 231, *cert denied* 513 US 1127; *Schulz v State of New York* [hereinafter *Schulz II*], 185 AD2d 596, 597, *appeal dismissed* 81 NY2d 336). Petitioners' challenge to the constitutionality of State Finance Law § 123-b (1), raised for the first time in their reply brief, is not properly before us (*see, Fishman v Beach*, 237 AD2d 705, 706; *O'Sullivan v O'Sullivan*, 206 AD2d 960) and lacks merit in any event (*see, Schulz II, supra*, at 597). We also agree with respondents that petitioners lack constitutional voter standing with regard to so much of the proceeding as is predicated on NY Constitution, article III, § 16, as that provision is not "linked to any voting rights" (*Schulz I, supra*, at 177; *see, Matter of Schulz v State of New York*, 81 NY2d 336, 344-347, *supra*).

■ We take a different view, however, on the question of petitioners' voter standing to prosecute the claim of violation of NY Constitution, article VII, § 11. In *Matter of Schulz v State of New York (supra)*, the Court of Appeals traced the evolution of standing principles as related to "public financing challenges", ultimately addressing the question of whether the Executive and Legislative Branches should "be allowed to erect 'an impenetrable barrier to any judicial scrutiny of legislative action[s]' " (*id.*, at 345, quoting *Boryszewski v Brydges*, 37 NY2d 361, 364) and giving a negative response. As noted by that Court, its 1975 decision in *Boryszewski v Brydges (supra)*

marked a significant departure from the established position that " 'the constitutionality of a State statute may be tested only by one personally aggrieved thereby' " (*Matter of Schulz v State of New York, supra,* at 344, quoting *St. Clair v Yonkers Raceway,* 13 NY2d 72, 76, *cert denied* 375 US 970), heralding a new era of governmental accountability to taxpayers challenging "enactments of our State Legislature as contrary to the mandates of our State Constitution" (*Boryszewski v Brydges, supra,* at 362). However, the Legislature's nearly simultaneous enactment of State Finance Law article 7-A, and particularly State Finance Law § 123-b (1), with its grant of statutory standing to citizen taxpayers but concomitant denial of standing in cases involving "the authorization, sale, execution or delivery of a bond issue or notes issued in anticipation thereof", greatly forestalled that effort. Ultimately, in *Wein v Comptroller of State of N. Y. (supra),* the Court of Appeals was constrained to the conclusion that the effect of the "exception" contained in State Finance Law § 123-b (1) was to deny both statutory and common-law standing to those challenging the issuance of State bonds or bond anticipation notes (*id.,* at 399-400; *see, New York State Coalition for Criminal Justice v Coughlin,* 64 NY2d 660).

However, in *Matter of Schulz v State of New York (supra)* the Court of Appeals again signaled its "disposition to expand rather than to contract the doctrine [of standing]" (*Boryszewski v Brydges, supra,* at 363) by recognizing an individual's right to enforce voting rights under NY Constitution, article VII, § 11 (*Matter of Schulz v State of New York, supra,* at 346-347). Citing to the public's skepticism for public indebtedness and particularly "borrowing by long-term debt to pay ordinary operating expenses of the government" (*id.,* at 346), the Court recognized that it is the electorate itself, exercising the "constitutional prerequisite of a public referendum", that represents the "ultimate, prudent check-and-balance" (*id.,* at 346). Under the circumstances, "[s]erious concerns accompany a complete cloak of immunity that would preclude access to judicial review of challenged public financing schemes" (*id.,* at 346). Therefore, the Court of Appeals announced the existence of "separate and independent * * * voter standing to sue on financing schemes subject to voter referendum approval" (*id.,* at 347 [citations omitted]) and directed that, to the extent they have been read as a total ban on standing in such cases, *Wein v Comptroller of State of N. Y. (supra), New York State Coalition for Criminal Justice v Coughlin (supra)* and State Finance

Law § 123-b should not be followed (*see, Matter of Schulz v State of New York, supra*, at 347).

Contesting none of the foregoing, respondents nonetheless contend that the Court of Appeals decision in *Matter of Schulz v State of New York (supra)* should be limited to its particular factual setting, i.e., "the narrow circumstance where plaintiffs seek to enforce the voter referendum requirement of [NY Constitution, article VII, § 11]". We are very much bothered by this position, predicated as it is on the assumption that the Executive and Legislative Branches of our State government may safely ignore the constitutional dictates concerning public financing laws so long as they are successful in exhorting the electorate to rubber-stamp their actions. It is worthy of some note that this Court 20 years ago recognized that an important purpose underlying NY Constitution, article VII, § 11 was "to permit the people of the State to intelligently evaluate and appraise the single purpose of any proposed long-term bonded indebtedness to be incurred by the State and to prohibit the Legislature from lumping several purposes into one bond authorization and thereby obtain voter approval that perhaps could not otherwise be obtained if the relative merit and strength of each purpose were separately evaluated and appraised" (*New York Pub. Interest Research Group v Carey*, 59 AD2d 172, 176, *revd on other grounds* 42 NY2d 527). In any event, we perceive no such limitation in *Matter of Schulz v State of New York (supra)*. To the contrary, we believe that the Court of Appeals expression of concern over the preexisting "cloak of immunity" (*id.*, at 346) and recognition of the need for "voter standing to sue on financing schemes subject to voter referendum approval" (*id.*, at 347) evidences an intent to permit voter standing in an action or proceeding predicated upon an alleged violation of any of the fundamental requirements of NY Constitution, article VII, § 11. In our view, a contrary determination would reduce the existing grant of standing to a meaningless charade.

We shall now address the merits of petitioners' claim that the enactment of the Bond Act violated NY Constitution, article VII, § 11. It is petitioners' position that, contrary to the express provision of NY Constitution, article VII, § 11, the Bond Act authorizes a "multiplicity" of works or purposes, none of which are "distinctly specified" therein. In essence, it is petitioners' argument that the stated "single purpose" of "preserving, enhancing, restoring, and improving the quality of the state's environment" is really nothing but a catch-all

phrase, encompassing a great many purposes and objects, including drinking water, water bodies, open space, parks, historic preservation, heritage areas, solid waste, contaminated properties, air quality, natural resources, debt financing, budget balancing, farmland preservation, agricultural protection, urban cultural parks, economic development, recreation, technology development and transfer, public access to water bodies, operating and maintenance costs and transportation. Although reasonable people may disagree on the applicability of some of the categories identified by petitioners, there can be no serious question that the "single work or purpose" stated in the Bond Act is a broad one.

The relevant inquiry, then, focuses on the actual breadth the constitutional provision will permit. As originally adopted in 1846 for the purpose of preventing the Legislature from excessive borrowing, the precursor to NY Constitution, article VII, § 11 required that any proposed long-term indebtedness be approved by the voters and must be for a "single work or object" (1846 NY Const, art VII, § 12; 1938 Report of NY Constitutional Convention Comm, vol 10, at 81-93; *see, New York Pub. Interest Research Group v Carey*, 59 AD2d 172, 175, *supra*). Feeling that the language "single work or object" was too restrictive because it would permit a bond issue for only one physical structure (1915 Revised Record of NY Constitutional Convention, vol 2, at 1295-1299), the provision was amended in 1938 to substitute the word "purpose" for the word "object" (*see, New York Pub. Interest Research Group v Carey, supra*, at 175). In 1977, this Court devised a test for determining whether the liberalized standard had been satisfied: "In order for a bond authorization act to constitute a single purpose the various components that enter into it must be so necessarily and naturally related that when combined they constitute an entity; something complete in and of itself but separate and apart from other objects" (*id.*, at 176). Applying the test so formulated, it determined that " 'comprehensive economic development' " does not constitute a single purpose (*id.*, at 176). By way of example, however, the Court did indicate that "transportation" or "environment" would constitute a single purpose (*id.*, at 176).

Although by no means bound by that dictum, we are of a like mind. Unlike the four sharply dissimilar subcategories considered in *New York Pub. Interest Research Group v Carey* (*supra* [industrial and community development, tourism and recreation, conservation and environment, and local transportation access]), here the major divisions of the Bond Act, i.e.,

safe drinking water, improvement and enhancement of water quality, improvement of solid waste facilities, restoration of contaminated properties and improvement and enhancement of air quality, are necessarily and naturally related to one another such that they constitute an entity complete in and of itself (*see, id.*, at 176). As such, we conclude that the voters were permitted to "intelligently evaluate and appraise" the wisdom of incurring the subject indebtedness for the single over-all purpose of benefitting the State's environment (*id.*) and, thus, the purpose underlying the "single work or purpose" provision of NY Constitution, article VII, § 11 was fulfilled.

For the foregoing reasons, we conclude that Supreme Court did not err in its declaration of constitutionality.

CARDONA, P. J., WHITE, CASEY and CARPINELLO, JJ., concur.

Ordered that the judgment is affirmed, without costs.