OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The Clean Water/Clean Air Bond Act of 1996 (the “Bond Act”) — passed by the Legislature, signed by the Governor and approved by referendum at the November 1996 general election — authorized the creation of a State general obligation debt of $1,750,000,000 to be used “for the single purpose of preserving, enhancing, restoring, and improving the quality of the state’s environment” (L 1996, ch 412, § 2). At the same time, the Legislature amended the Environmental Conservation
 
 *6
 
 Law, adding a new article 56 to implement the Bond Act (L 1996, ch 413).
 

 The Bond Act specified that the moneys received from the sale of the bonds would be expended to create a safe drinking water program ($355 million); to fund projects related to the improvement and enhancement of water quality — including programs focused on open space land conservation, parks, historic preservation and heritage areas ($790 million); to improve solid waste facilities ($175 million); to restore contaminated properties ($200 million); and to improve and enhance air quality ($230 million) (L 1996, ch 412, § 4). The implementing legislation particularized how the bond proceeds would be allocated and expended, including funding for the Hudson River estuary plan, the Department of Environmental Conservation’s “great lakes program,” landfill closure efforts in New York City, municipal recycling projects, environmental restoration projects, and comprehensive conservation and management plans for the Long Island Sound, Lake Champlain, Onondaga Lake, the New York/New Jersey Harbor and the Peconic Estuary.
 

 In October 1996, petitioners commenced this combined declaratory judgment action and CPLR article 78 proceeding for a determination that the Bond Act and its related implementing provisions violate article VII, § 11 and article III, § 16 of the New York State Constitution. Petitioners subsequently sought both summary judgment and a preliminary injunction to remove the referendum from the ballot. Respondents, in turn, moved to dismiss on a number of threshold grounds.
 

 Supreme Court, after a hearing, denied petitioners’ request for an injunction, determined that petitioners lacked standing and concluded that the Bond Act did not violate the cited constitutional provisions. After we transferred petitioners’ direct appeal to the Appellate Division (89 NY2d 933), that court — while finding standing to assert a challenge under article VII, § 11 of the State Constitution — affirmed. Petitioners appealed as of right pursuant to CPLR 5601 (b) (l).
 
 [1]
 
 Agreeing with the Appellate Division, we now affirm.
 

 
 *7
 
 Single Work or Purpose Requirement
 

 We first consider the threshold issue of standing to challenge the Bond Act as violative of the “single work or purpose” requirement set forth in article VII, § 11 of the State Constitution.
 
 [2]
 

 As a general principle, citizen-taxpayer status does not confer standing to challenge the issuance of State bond acts. That principle is grounded on a recognition that such lawsuits “increase the cost of raising the revenue by creating uncertainty in the minds of potential investors”
 
 (see, Wein v Comptroller of State of N. Y.,
 
 46 NY2d 394, 400; State Finance Law § 123-b [1]). As we held in
 
 Matter of Schulz v State of New York
 
 (81 NY2d 336, 344-347), however, there are limited instances when a voter may challenge a bond issue on the basis that it infringes upon explicit voter protections provided by article VII, § 11 of the State Constitution. Such an instance is presented by petitioners’ first challenge.
 

 Article VII, § 11, which sets forth the prerequisite of a public referendum for all proposed long-term public debt, also mandates that proposed public financing schemes must be “for some single work or purpose, to be distinctly specified therein.” That requirement prevents the Executive and Legislative branches of our State government from embracing in one bond act several distinct and unrelated purposes, none or some of which could singly obtain referendum approval
 
 (see,
 
 Problems Relating to Taxation and Finance, 1938 Report of NY Constitutional Convention Comm, vol 10, at 87 [the Poletti Report]). By restricting each bond act to a single work or purpose, referendum approval cannot be procured by combining the votes of several different groups, each with an interest in one of the bond act’s multiple purposes, and thereby creating a majority that will approve them all
 
 (see, New York Pub. Interest Research Group v Carey,
 
 59 AD2d 172, 176,
 
 revd on other grounds
 
 42 NY2d 527).
 

 The requirement also assures that several different purposes — some of which are not independently worthy of referendum approval — will not be combined in a single bond act in the hopes that the voters will not separately evaluate the relative merit and strength of each purpose. If voters could not bring a
 
 *8
 
 claim for violation of that clause, the Executive and Legislative branches could safely ignore it altogether, and referendum approval — garnered from voters unable to cast an intelligent ballot — would be reduced to a “meaningless charade” (233 AD2d 43, 48).
 

 While petitioners may have standing to assert this particular claim, their argument nonetheless fails on the merits. Petitioners argue that the Bond Act, when read in conjunction with its implementing legislation, impermissibly authorizes the use of bond proceeds for a multitude of unrelated projects, rendering voters at the November 1996 referendum unable to “intelligently evaluate and appraise the single purpose” of the proposed public debt.
 

 Petitioners’ primary support for this argument is
 
 People ex rel. Hopkins v Board of Supervisors
 
 (52 NY 556, 561), an 1873 case in which this Court concluded that a bond act was unconstitutional, and therefore invalid, because its “appropriations [were] in fact many, and their objects many and diverse.” When
 
 Hopkins
 
 was decided, article VII, § 12 of the State Constitution restricted the acquisition of public debt in a number of ways: requiring voter approval of bond issuances, directing that only one bond act at a time could be submitted for such approval and limiting the subject matter of each bond act to a “single work or
 
 object.”
 
 Originally adopted in 1846, these constitutional mandates were intended to stem the extensive, unwise government borrowing practices that had caused serious financial problems in the 1840s.
 

 By the early 1900s, however, it was apparent that the “single work or object” clause was too restrictive and unwieldy. Interpreted as only permitting bond issuances for a single physical structure, the requirement severely hampered the State’s ability to build roads, develop parks and supply other desperately needed public works
 
 (see,
 
 1915 Revised Record of NY Constitutional Convention, vol 2, at 1295-1299 [remarks of Delegate Alfred E. Smith,
 
 et al.];
 
 Poletti Report,
 
 op. cit,
 
 vol 10, at 90-96). Accordingly, at the Constitutional Convention of 1938, the “single work or
 
 object”
 
 language was replaced with the current “single work or purpose.” That revision was intended to create a more flexible standard and “remove any doubt that may exist as to the power of the State to contract a debt for some single objective that may relate to more than one physical structure or, indeed, as in the case of relief bonds, may not include a physical structure”
 
 (see,
 
 Journal of 1938 NY Constitutional Convention, Doc No. 3, at 6-7).
 

 
 *9
 
 While broader than its predecessor, the clause still precludes the Legislative and Executive branches from proposing bond issues aimed at “purposes” that are so imprecise as to be essentially generic, thereby allowing funding of a host of projects having no discernible common theme
 
 (see, e.g., New York Pub. Interest Research Group v Carey,
 
 59 AD2d at 173-174, 176-177,
 
 supra
 
 [bond issue for “comprehensive economic development” where the funding was earmarked for four different areas of “development” — including industrial development, environmental projects, tourism and transportation — was struck down because the areas were “not so naturally and necessarily related to each other as to constitute a single purpose within the meaning of the Constitution”]). Indeed, application of the more flexible “single work or purpose” standard of article VII, § 11 has produced results that are profoundly different from those ensuing from the more rigid requirement in effect when
 
 Hopkins
 
 was decided. It is now possible, for example, to fund a number of different projects through a single issue, so long as those projects have a common goal
 
 (New York Pub. Interest Research Group v Carey,
 
 59 AD2d at 175-176,
 
 supra).
 
 Petitioners’ reliance on
 
 Hopkins,
 
 applying article VII, § 12’s outdated “single work or object” requirement, is plainly misplaced.
 
 [3]
 

 The Bond Act at issue in this dispute satisfies the modern constitutional standard. The act authorizes the creation of State indebtedness for projects in a number of subcategories, all of which are directly related to the single categorical purpose of improving the State’s environment. Each of the subcategories — safe drinking water,-improvement of solid waste facilities, remediation of contaminated properties, enhancement of air and water quality, and preservation of open spaces, parks and historic sites — is naturally and logically related to the stated unitary goal of “preserving, enhancing, restoring and improving” the environment (L 1996, ch 412, § 2). Thus, the “single work or purpose” requirement is satisfied.
 

 We note that, contrary to petitioners’ argument, the preservation and restoration of parks, open spaces and sites connected with our historical and cultural heritage have long been
 
 *10
 
 considered part and parcel of the State’s over-all environmental management plan. The State Environmental Quality Review Act mandates consideration of “objects of historic or aesthetic significance” that may be affected by a proposed project (ECL 8-0105 [6];
 
 see also,
 
 6 NYCRR 617.4 [a] [9] [projects having an impact on historic sites are Type I actions]), and the Legislature has specifically linked the State’s “invaluable natural and historic resources” as “key components of the
 
 environmental
 
 and social policy of the state” (Environmental Protection Act of 1993, L 1993, ch 610, § 2, codified at ECL art 54 [emphasis supplied]). Furthermore, section 14.01 of the Parks, Recreation and Historic Preservation Law recognizes that historical, archaeological, architectural ánd cultural heritage sites are “among the most important environmental assets” the State has. Thus, there is nothing dissonant about including projects related to the preservation of such sites in a Bond Act aimed at conserving and improving the environment.
 

 Inasmuch as the Clean Water/Clean Air Bond Act of 1996 is aimed at a single purpose — “preserving, enhancing, restoring, and improving the quality of the state’s environment”— and that purpose is clearly set forth in the Bond Act itself, there is no merit to petitioners’ additional contention that that provision fails to satisfy the constitutional requirement that the purpose of the debt be “distinctly specified” in the act (NY Const, art VII, § 11). That the particular projects for which the proceeds were to be appropriated are listed in a separate legislative enactment is of no legal consequence in this context because the Constitution requires only that the bond act “distinctly specif[y]” the “single work or purpose” of the bond issue; it does not require a listing of the myriad activities to be undertaken in the service of that work or purpose. Indeed, a rule that would require a detailed enumeration of each and every funded project in the bond act itself would lead to clotted verbiage and unwieldy ballot submissions, thereby defeating the primary purpose of article VII, § 11.
 

 Thus, we conclude that the Bond Act does not violate the “single work or purpose clause” of article VII, § 11 of the State Constitution.
 

 Incorporation by Reference
 

 Petitioners next challenge the Bond Act as violative of article III, § 16 of the State Constitution, which provides: “No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or
 
 *11
 
 which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act.” They urge that the Bond Act is constitutionally flawed because it requires reference to separate provisions of its implementing legislation without explicitly incorporating the terms of that enactment.
 

 As with petitioners’ first argument, standing is a threshold determination, and here we conclude that they lack standing to maintain this claim. Although voters may have standing to challenge the constitutionality of the Bond Act on the ground that a voter protection dictated by article VII, § 11 was denied, it does not follow that they also can challenge the Bond Act under the very different provisions of article III, § 16. Indeed, the purpose of article III, § 16 is not related in any way to the exercise of referendum rights, but rather prevents “the
 
 Legislature
 
 from incorporating into its acts the provisions of other statutes or regulations which affect public or private interests in ways not disclosed upon the face of the act, and which would not have received the sanction of the
 
 Legislature
 
 if fully understood by it”
 
 (Matter of Medical Socy. v State of New York Dept. of Health,
 
 83 NY2d 447, 452-453 [emphasis supplied]). Thus, the “evil” that article III, § 16 was intended to address is “the possibility of * * * misapprehension or unawareness” among State
 
 legislators,
 
 not citizens voting in a referendum
 
 (id.
 
 at 453).
 

 Nor are we persuaded by petitioners’ alternative argument that voter standing exists so long as the referendum requirement of article VII, § 11 applies, even if the underlying challenge to the statute is based upon a different provision of the State Constitution. That position, wholly at odds with the first principle that citizen-taxpayers do not as a rule have standing to challenge bond issues, would allow innumerable bond act challenges to be slipped under the blanket of an article VII, § 11 challenge
 
 (Wein v Comptroller of State of N. Y.,
 
 46 NY2d at 400,
 
 supra).
 
 In that petitioners lack standing, we do not reach the merits of their article III, § 16 claim. Further, petitioners’ remaining arguments are either unpreserved or without merit.
 

 Accordingly, on the appeal from the July 17, 1997 order of the Appellate Division, the order should be affirmed, with costs; insofar as it is taken from the March 4, 1997 Appellate Division order, the' appeal should be dismissed upon the ground that the order does hot finally determine the action within the meaning of the Constitution.
 

 
 *12
 
 Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur; Judge Levine taking no part.
 

 On the appeal from the July 17, 1997 order of the Appellate Division, order affirmed, with costs; appeal, insofar as taken from that portion of the March 4, 1997 Appellate Division order that denied appellants’ motion to enlarge the issues on appeal, dismissed upon the ground that that part of that Appellate Division order does not finally determine the action within the meaning of the Constitution.
 

 [1]
 

 . Petitioners’ notice of appeal referred both to the Appellate Division order affirming the Supreme Court’s judgment and to a March 4, 1997 Appellate Division order denying a motion to enlarge the issues on appeal to include arguments pertaining to respondents Pataki, Finnegan and Sheffer that had previously been abandoned. The latter order is nonfinal and, accordingly, so much of petitioners’ appeal as pertains to the March 4, 1997 order should be dismissed.
 

 [2]
 

 . In relevant part, article VII, § 11 provides that “no debt shall be hereafter contracted by or in behalf of the state, unless such debt shall be authorized by law, for some single work or purpose, to be distinctly specified therein.”
 

 [3]
 

 . The bond act in
 
 Hopkins
 
 authorized the creation of State debt to pay for canal construction, general fund deficiencies and the State’s “floating indebtedness” — objects that have neither a natural connection with each other nor a common unifying purpose. It is thus unlikely that the act would have survived scrutiny under the more flexible “single work or purpose” standard.